AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black Apple iPhone<br>Seized as FP&F No. 2023565500038801<br>("Target Device") | ) ) ) ) ) ) )  Case No. **23mj3409-SBC** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the      Southern      District of      California     , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, U. S. C. § 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Shawna M. Wilson, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Shawna M. Wilson, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date:      09/19/2023

*Judge's signature*

City and state:  San Diego, California         HON. STEVE B. CHU , U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

Black Apple iPhone
Seized as FP&F No. 2023565500038801
**("Target Device")**

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

11

## ATTACHMENT B

ITEM TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **August 15, 2023, through September 15, 2023**:

a.  tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b.  tending to identify accounts, facilities, storage Device, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.  tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.  tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.

# AFFIDAVIT

I, Shawna M. Wilson, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic Device:

> Black Apple iPhone
> Seized as FP&F No. 2023565500038801
> (**"Target Device"**)

the **Target Device**, as further described in Attachment A, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant related to the investigation and prosecution of Vicente VILLICANO-Reyes for attempting to transport and move illegal aliens within the United States. The **Target Device** is currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2019 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal

1

Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for four years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities,

2

including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as

3

emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10.   This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

   b. tending to identify accounts, facilities, storage Device, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On September 15, 2023, Watch Commander (WC) A. Lupiani, Supervisory Border Patrol Agent G. Davis and Border Patrol Agent A. Overbay were performing their assigned duties in the Campo Border Patrol Station's area of responsibility. At approximately 8:12 PM, Border Patrol Agent L. Robbins was traveling south on Church Road approaching State Route 94 (SR-94). When Agent Robbins approached the intersection stop sign, she observed a black BMW stopped for an unusually long period of time. Agent Robbins then observed the BMW slowly turn onto SR-94, as if the driver was not sure where to go. After a while, Border Patrol Agent J. Anguiano notified Agent Robbins that the BMW had turned south onto Tierra Del Sol Road (TDS). During this time, agents were actively tracking a group of suspected illegal immigrants that were making their way towards TDS. Agent Robbins turned south on TDS but lost visual of the BMW and notified agents to be on the look-out. Border Patrol Agent C. Thomas then notified Agent Robbins that the BMW had made a U-turn at an area known to Border Patrol agents as "TDS end of pavement," and was driving back north on TDS.

12. As the BMW passed Agent Robbins location, she began to follow. As Agent Robbins got closer to the BMW, the driver accelerated. Agent Robbins observed as the BMW approached the intersection, applied his brakes, but then kept driving north. As the BMW approached the stop sign at the intersection of TDS and SR-94, he applied his brakes slightly, but did not stop and kept driving north on TDS. At this time, Agent Robbins attempted a vehicle stop, but the BMW failed to yield. The BMW turned east on Old Highway 80 and accelerated to speeds over 100 miles per hour. Agent Overbay was driving west on Old Highway 80, when he observed a large dust cloud from a side dirt road and taillights that were traveling west. Agent Overbay was able to catch up to the vehicle and it was the BMW. At approximately 8:39 PM, as the BMW was now traveling north on Ribbonwood Road, Agent Overbay attempted to conduct a vehicle stop. The BMW pulled over just north of the CalFire Fire Station located on Ribbonwood Road. Agent Overbay

made the driver, later identified as the defendant, Vicente VILLICANO-Reyes, turn off the vehicle. Agent Davis arrived on scene and at approximately 8:41 PM, placed VILLICANO under arrest for suspicion of smuggling illegal immigrants.

13. Around the same time, WC Lupiani had arrived on scene of where the BMW had pulled out of the dirt road near Ross Avenue and Old Highway 80. After a brief search, WC Lupiani discovered shoe prints, which he followed until encountering one individual lying face down attempting to conceal himself in the thick brush. WC Lupiani, while dressed in his full rough duty uniform with patches and badge visible conducted an immigration inspection. The individual, later identified as material witness, Omar SANCHEZ-Tapia, stated that he was from Michoacan and that he understood it was illegal to cross the United States/Mexico International Boundary fence. At approximately 9:38 PM, WC Lupiani placed SANCHEZ under arrest.

14. Agent Overbay was notified by Agent Thomas that he was tracking sign for a second individual. Agent Overbay drove to Interstate 8, just north of where Agent Thomas was searching. After a brief search, Agent Overbay discovered shoe prints which he followed north until encountering one individual attempting to conceal himself within some boulders. Agent Overbay identified himself as a Border Patrol Agent and conducted an immigration inspection. The individual, later identified as material witness, Javier GOMEZ Hernandez, stated that he was a citizen of Mexico illegally present in the United States. At approximately 10:56 PM, Agent Overbay placed GOMEZ under arrest.

15. At the time of arrest, a Black Apple iPhone (**Target Device**) was found plugged into VILLICANO's vehicle and was sitting in the cupholder. VILLICANO claimed the phone as his. The device was subsequently seized.

16. The defendant VILLICANO was read his Miranda Rights and was willing to speak without an attorney present. VILLICANO stated that he was the driver of the BMW and that at 12:00 PM, he decided to drive from Anaheim, California to a casino in San

6

Diego, California. VILLICANO stated that he ate and hung out at the casino until 8:00 PM, when he left.

17. Material witnesses GOMEZ and SANCHEZ stated that they are citizens of Mexico without any immigration documents allowing them to enter or remain in the United States illegally. SANCHEZ stated that he made smuggling arrangements to be smuggled into the United States and was going to pay approximately $13,000 USD. GOMEZ stated that he was being guided by smugglers on where to go and when to hide. GOMEZ and SANCHEZ stated that they were told to be on the lookout for a black BMW. GOMEZ and SANCHEZ stated that they were told once they saw the BMW to get in. GOMEZ stated that when the BMW arrived, the driver unlocked the doors and told them to hurry up. GOMEZ stated that he sat behind the driver and SANCHEZ sat in the back seat on the passenger side. GOMEZ stated that he heard the driver talking on the phone with someone, who asked him if he had picked up the individuals, to which he responded "yes." GOMEZ stated that when the driver suspected of being followed by Border Patrol agents, he asked them what he should do. GOMEZ stated that he told him, that he did not know, to which the driver proceeded to accelerate his speed. GOMEZ and SANCHEZ stated that they told the driver multiple times to stop, but they were ignored. GOMEZ stated that at one point, he saw the driver accelerate to 120 miles per hour. GOMEZ stated that the driver continued to talk on the phone with another individual, telling him that he did not want to get caught with the two individuals. GOMEZ and SANCHEZ stated that when the driver stopped, they got out and ran their separate ways.

18. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using

the **Target Device** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on **August 15, 2023, through September 15, 2023.**

## METHODOLOGY

19.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

21. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

22. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

//

//

//

//

//

//

//

## CONCLUSION

23. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of an alien smuggling violation of Title 8, United States Code, Sections 1324.

24. Because the **Target Device** were seized at the time of the defendant's arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from **August 15, 2023, through September 15, 2023.**

25. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A and seize the item listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Shawna M. Wilson
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 19th day of September 2023.

_____
HON. STEVE B. CHU
United States Magistrate Judge